**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| JOSE CARABALLO, | : | |
| | : | Civ. No. 23-1889 (CPO) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STEVEN KNIGHT, | : | |
| | : | |
| Respondent. | : | |

**CHRISTINE P. O'HEARN, U.S.D.J.**

## I.   INTRODUCTION

Petitioner Jose Caraballo, a federal inmate incarcerated at FCI Fort Dix in New Jersey, is serving a 180-month sentence after having been convicted of possession with intent to distribute cocaine and a related weapons offense. Before the Court is his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his disciplinary proceedings, which resulted in the loss of good-conduct time after he was found to have engaged in a sexual act. ECF Nos. 1, 1-1 at 1. For the reasons below, the petition will be denied.

## II.   BACKGROUND

### A.   Factual Background

On October 19, 2015, Petitioner was sentenced in the United States District Court for the Western District of New York to a 180-month term of incarceration after pleading guilty to possession of cocaine with intent to distribute and possession of a firearm in furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A)(i). *See United States v. Caraballo*, No. 15-cr-6027 (W.D.N.Y. Oct. 23, 2015), ECF No. 33 at 2 (judgment); ECF

No. 9-1 at 6–7.  Petitioner is scheduled to be released from federal custody in January 2028.  *See* https://www.bop.gov/inmateloc/ (search "Jose Guerra Caraballo"; last visited Feb. 16, 2024).

The disciplinary sanctions that are the subject of the current habeas petition arose from the following facts.  On June 7, 2022, Petitioner was issued an incident report charging him with engaging in sexual acts, which the report describes as a violation of "Prohibited Act Code 205." ECF No. 9-2 at 4, 11.  The report described Petitioner's alleged violation as follows:[1]

> On Monday, June 6, 2022, at 1601 hrs., a [Prison Rape Elimination Act ("PREA")] Investigation involving inmate [redacted] and inmate Caraballo, Jose Reg. No. 23958-055 was closed.  Based on the eye witness account of the 5812 Unit Officer and the statements provided by multiple inmates present, the investigation determined inmate [redacted] and inmate Caraballo were consensually engaging in a sexual act on May 15, 2022 at approximately 2330 hrs.  The 5812 Unit Officer stated on May 15, 2022 at 2330 hrs. he was conducting rounds in the building when he entered room [redacted] and observed a curtain hanging up over bed 3L.  The 5812 Unit Officer stated he heard squeaking from bed 3L so he turned the lights on and pulled the curtain back.  The 5812 Unit Officer stated when he pulled the curtain he saw inmate Caraballo lying next to inmate [redacted] and pulling his penis out of [redacted] anus.  The 5812 Unit Officer further stated he observed Caraballo was also trying to pull up his pants.  During the investigation, all the inmates quartered in room [redacted], and present at the time of the incident were questioned.  Multiple inmates stated [redacted] and Caraballo were engaging in sexual acts that night, and on previous nights.  The inmate in the upper bunk directly across from inmate [redacted] bunk stated they would often hear the noises associated with two people engaging in anal sex and the sounds of one individual performing oral sex on another.  Multiple inmates in room [redacted] provided corroborative statements indicating [redacted] has made threats in the past to put [sic] bring false PREA allegations against them if they said anything in order to continue to perform sexual acts with Caraballo in the room without issue.

*Id.* at 11.  The report, prepared by "M. Fernandez," indicates that a copy was delivered to Petitioner on June 7, 2022.  *Id.*

Thereafter, a lieutenant identified in the records as "D. McCool" investigated the incident. *Id.* at 13.  The report indicates that McCool advised Petitioner of his rights and Petitioner stated he

---

[1] The narrative from the report is reproduced with the redactions present in the copy of the report filed by Respondent.  Redactions in the copy of the discipline hearing officer ("DHO") report filed by Respondent will also be noted herein.

2

understood them; Petitioner received a copy of the report and was read its contents; he did not request witnesses, displayed a fair attitude during the investigation, and made the following statement: "No comment." *Id*. Based on the information in the report, Lieutenant McCool found "the charge of code 205 is valid." *Id*. The report was referred to a Unit Discipline Committee ("UDC").

Petitioner appeared before a UDC on June 13, 2022, and told the UDC he had "[n]o comment" regarding the incident. *Id*. at 12. The UDC referred the matter to a discipline hearing officer ("DHO") for further review. *Id*.

Also on June 13, 2022, Petitioner signed a form titled "Notice of Discipline Hearing Before the (DHO)," indicating that he did not wish to have a staff representative or call witnesses at the hearing. *Id.* at 10. He also signed a form titled "Inmate Rights at Discipline Hearing," acknowledging that he had been advised of various rights before the DHO, including: (1) the right to receive a written copy of the charges at least 24 hours before the hearing; (2) the right to have a staff member who is reasonably available to serve as a staff representative at the hearing; (3) the right to call witnesses, present witness statements, and introduce documentary evidence, "provided institutional safety would not be jeopardized"; (4) the right to make a statement or to remain silent; (5) the right to be present throughout the disciplinary hearing; (6) the right to receive written notice of the DHO's decision and the facts supporting the decision; and (7) the right to appeal. *Id.* at 9.

Petitioner appeared before the DHO on July 8, 2022. *Id.* at 4. The DHO report notes a "delay in process" because a "PREA investigation [was] conducted." *Id.* (capitalization omitted). At the hearing, Petitioner was advised of his rights, confirmed he understood them, and asserted he was not guilty. *Id.* at 4, 6. He did not cite procedural issues or provide documentary evidence

3

for the DHO to consider. *Id.* The DHO summarized Petitioner's statement at the hearing as follows:

> I go to to [sic] [redacted] room often so this occasion was not out of the ordinary. Caraballo stated he was not having sex with inmate [redacted] and doesn't know why the officer made that accusation. Caraballo stated after the officer left the room he attempted to follow him, but the officer stood outside the door and told Caraballo he could not leave the room. Caraballo stated he asked the Lieutenant to send him to the outside hospital so he could prove he was not having sex. Caraballo stated [redacted] does use a blanket to cover her bunk and maybe that is why the officer believed something was going on. Caraballo stated if the officer had actually come over and pulled the blanket down he would have seen nothing was happening.

*Id.* at 4–5.

In addition to the incident report and investigation, the DHO considered the following documents: (1) "PREA Compliance Checklist (One Source Document)"; (2) "Operations Lieutenant Memorandum dated May 16, 2022"; (3) "the staff generated Psychology Report"; (4) "the SIS Investigation Report FTD-22-0137 in relation to PREA Allegations"; (5) "the photo sheet of [redacted] Reg. No. [redacted]"; (6) "the photo sheet of Caraballo, Jose Reg. No. 23958-055"; (7) "the Medical Assessment for [redacted] Reg. No. [redacted] (VICTIM)"; (8) "the Medical Assessment for Caraballo, Jose Reg. No. 23958-055 (ASSAILANT)"; (9) "the Inmate Rights at Discipline Hearing -- (BP-A293) and Notice of Discipline Hearing Before the (DHO) -- (BP-A294)"; (10) "the written statement provided by Caraballo, Jose Reg. No. 23958-055 (ASSAILANT)"; (11) "the written statement provided by [redacted] Reg. No. [redacted] (VICTIM)"; (12) "the staff generated memorandum authored by FTD SIS Staff May 17, 2022"; and (3) "the provided SENTRY Documentation for both inmates." *Id.* at 5–6 (capitalization in original).

The DHO determined that Petitioner failed to "present sufficient evidence to refute the charge," and found, "based on the greater weight of the evidence," that Petitioner committed "the

4

prohibited act [of] Engaging in a sexual act." *Id.* at 6–7. The DOA based this decision on (1) M. Fernandez's written statement in the incident report; (2) Petitioner's testimony denying "the eye witness account of a Federal Law Enforcement Officer [that] the incident report was true"; (3) Petitioner's inability to "to provide the DHO with any significant evidence, or information to corroborate [his] claims that [he] did not engage in a sexual act"; (4) "information contained in the SIS Report and was found to be reliable because the information was particular to the incident and is outlined in a separate FOI Exempt memorandum"; (5) "Photographs depicting [Petitioner] in FCI Fort Dix, New Jersey (May 15, 2022, at approximately 11:30 p.m., in the FCI Fort Dix, New Jersey (5812 room [redacted][))]"; (6) medical assessments for Petitioner; (7) and "the Operations Lieutenant Memorandum dated May 16, 2022." *Id.* at 7.

The DHO also considered the statements of Petitioner, the inmate with whom he was alleged to have engaged in a sexual act, and inmates in the room where the act occurred, and concluded that the interaction was consensual:

> Based on the statements provided by the inmates in room [redacted] and both inmate [redacted] Reg. No. [redacted] and inmate Caraballo, Jose Reg. No. 23958-055, this investigation has determined the sexual acts observed by the 5812 Unit Officer were consensual. Any allegations of PREA from the incident should be considered unsubstantiated as there was no evidence discovered indicating [redacted] was being coerced by force or threat of violence to perform sexual acts with Caraballo. [Redacted] and Caraballo denied any sex acts occurred at all, and the inmates in the room indicated the two have been in a sexual relationship for some time prior to the incident on May 15, 2022. The inmates in the room stated they did not report the incidents earlier because [redacted] had made threats to file false PREA allegations against them. [Redacted] has attempted to manipulate the PREA process to facilitate a sexual relationship with inmate Caraballo in the room.

*Id*.

In finding Petitioner's denial not credible and determining that the greater weight of evidence supported a finding that Petitioner engaged in the prohibited act, the DHO reasoned:

> The DHO considered your denial of engaging in a sexual act, however the DHO feels you are providing inaccurate information in order to not accept full

5

> responsibility for your actions. The DHO gave greater weight to the staff member's eyewitness account of the incident as described in the section 11 narrative of the incident report, photographs, and FCI Fort Dix generated reports. By eye witness accounts you were clearly observed engaging in a sexual act; you were unable to provide any significant evidence or information to contradict the actions reported by staff. Your reported/observed actions met the threshold for engaging in a sexual act as described above. Therefore, based on the greater weight of evidence, the DHO determined you did not present sufficient evidence to refute the charge. Consequently, the DHO finds you committed prohibited act Engaging in a sexual act, code 205.

*Id*.

The DHO disallowed 27 days of good conduct time, and imposed 40 days of disciplinary segregation and 120 days' loss of visitation privileges, determining that these sanctions were appropriate because:

> This type of behavior is disrespectful and hinders staff's ability to maintain their areas of responsibility within a correctional environment. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times. Although not directly related to the infraction, privileges were taken to deter the inmate from this behavior in the future.
>
> The action on the part of any inmate to become involved in a sexual act, whether in the inmate cell or any other location, poses a serious threat to the health, safety, and welfare of not only the inmate involved, but that of all other inmates and persons involved. Sexual activities within a correctional setting, have resulted in serious confrontations in the past, and, therefore, cannot and will not be tolerated. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times. Although not directly related to the infraction, privileges were taken to deter the inmate from this behavior in the future.

*Id.* at 8.

Petitioner was provided a copy of the report on July 29, 2022, and was advised that he had the right to appeal within 20 days. *Id*. Respondent does not dispute that Petitioner thereafter exhausted his administrative remedies. *See* ECF No. 9-1 (Decl. of Federal Bureau of Prisons ("BOP") Legal Assistant Corrie Dobovich) at 3 ¶ 8 ("Administrative remedy records reveal on February 22, 2023, Petitioner exhausted his administrative remedies with respect to his challenge

6

to the DHO's determination that he committed a Code 205 violation.") (citing *id.* at 16 (administrative remedy generalized retrieval document)).

## B. The Habeas Petition

Petitioner, proceeding pro se, filed this § 2241 petition in April 2023. ECF No. 1. He argues that the incident report and DHO findings should be expunged from his BOP file because "the [BOP] failed to present evidence during the DHO hearing." ECF No. 1-1 at 1 (quotations omitted). He argues that because (1) "proper procedures and protocols" specified in the PREA were allegedly not followed—specifically, no "rape kit or forensic medical exam was done"; and (2) "only the word of the Fort Dix staff member was relied upon" for the DHO's finding of guilt, "there is absolutely no evidence . . . to support the 205 Code violation." *Id.* at 1–2 (capitalization and quotations omitted).[2] Respondent answered the petition in December 2023, arguing that the Court should deny the petition because (1) the DHO's decision was supported by "some evidence," the applicable standard (ECF No. 9 at 13–17); (2) there is no private right of action under the

---

[2] Petitioner further asserts that "[t]he incident report erroneously claimed that [he] was at FCI Danbury when [he] was . . . at FCI Fort Dix" (ECF No. 1 at 2), however there is no evidence of this in the record. ECF No. 9-2 at 1 (DHO report), 9 (Inmate Rights at Discipline Hearing form), 11 (incident report) (all correctly identifying FCI Fort Dix as the institution in which the incident occurred.). In any event, even if this were true, typographical errors of this sort do not provide a basis for habeas relief. *See*, *e.g.*, *Millhouse v. Warden Lewisburg USP*, 785 F. App'x 931, 935 (3d Cir. 2019) (finding no due process violation where the incident report contained a typographical error misidentifying the inmate's name in the description of the incident); *Herrera-Peralta v. Ortiz*, No. 20-8958, 2021 WL 2201322, at *3 (D.N.J. June 1, 2021) ("Petitioner was not deprived of due process if DHO Delaney made an error in copying and pasting language into his report."); *Dorsey v. Ortiz*, No. 20-3535, 2021 WL 1171894, at *6 (D.N.J. Mar. 29, 2021) (no due process violation where incident report contained several typographical errors including the wrong name and unit number of the institution where the incident took place); *Crane v. White*, No. 20-636, 2020 WL 4347382, at *3 (M.D. Pa. July 29, 2020) (noting several errors in the DHO report, including a misidentification of the petitioner, an incorrect inmate number, an incorrect offense date, and a citation to the wrong incident report, but concluding that, "[w]hile the errors are regrettable, it is clear that they are typographical errors, which do not constitute a due process violation."); *Wyckoff v. White*, No. 20-642, 2020 WL 3265465, at *4 (M.D. Pa. June 17, 2020) ("Nothing in the record, however, supports Petitioner's assertion that this is anything more than a typographical error, and a typographical error in the reports is not the foundation of a due process violation contemplated by *Wolff*.") (internal quotation marks omitted)).

7

PREA (*id.* at 18–19); and (3) the sanction imposed was within the available range (*id.* at 19–20). Petitioner did not reply.

For the reasons that follow, the Court will deny the petition.

### III. DISCUSSION

#### A. Applicable Law

"Federal prisoners have a liberty interest in statutory good time credits." *Campbell v. Warden Allenwood USP*, 808 F. App'x 70, 72 (3d Cir. 2020) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); 18 U.S.C. § 3624(b)(1); *Vega v. United States*, 493 F.3d 310, 314 n.4 (3d Cir. 2007)). Thus, a prison disciplinary hearing that may result in the loss of good conduct time must provide at least the following due process safeguards:

> (1) at least twenty-four hours of advance written notice of the charges, (2) an opportunity to call witnesses and present documentary evidence, (3) assistance from an inmate representative if the charge involves complex issues or if the prisoner is illiterate, and (4) a written decision explaining the evidence relied upon and the reasons for the disciplinary action.

*Campbell*, 808 F. App'x at 72 (citing *Wolff*, 418 U.S. at 563–67). Inmates are also entitled to a "proceeding before an impartial decision-making body." *Campbell*, 808 F. App'x at 72. To that end, "due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the prisoner's case." *Redding v. Holt*, 252 F. App'x 488, 491 (3d Cir. 2007) (citing *Wolff*, 418 U.S. at 592)).

"Where a prisoner's rights have been respected, a prison disciplinary finding will stand on habeas review so long as it is supported by 'some evidence in the record.'" *Jones*, 2023 WL 8295274, at *2 (quoting *Campbell*, 808 F. App'x at 72). This standard "is minimal and 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence." *Id.* (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985)); *see also Hill*, 472 U.S. 455–56 ("The fundamental fairness guaranteed by

8

the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.").

### B. Analysis

Petitioner received advance notice of the charges and was given an opportunity to request a staff representative, request witnesses, and present evidence. ECF No. 9-2 at 4, 6, 10. He received a preliminary hearing before the UDC (*id.* at 12) and a final hearing before an impartial DHO (*id.* at 4–8), and was provided a statement of reasons for the DHO's decision (*id.* at 6–8). *See Wolff*, 418 U.S. at 563–67 (requiring an impartial decision-maker, advance notice in writing of the charges, an opportunity to call witnesses and present evidence, assistance from an inmate representative, and a written decision). Thus, Petitioner received the procedural protections he was due. *See Jones v. Merendino*, No. CV 23-89, 2023 WL 8295274, at *3 (D.N.J. Dec. 1, 2023) ("Petitioner clearly received notice of the charges the day after the incident, was provided an opportunity to request witnesses and submit statements by his proposed witnesses, as well as his own statement, and declined a staff representative. He received a preliminary hearing before the UDC, and a final hearing before a DHO, and was provided a statement of reasons for the DHO's decision. Thus, Petitioner received all of the procedural protections to which he is due, and his Due Process rights were not violated during the prison disciplinary proceedings").

Turning to the DHO's decision, the Court finds the DHO's determination that Petitioner engaged in a prohibited sexual act (ECF No. 9-2 at 7) was supported by "some evidence." *Hill*, 472 U.S. at 447. Petitioner's arguments that the "some evidence" standard was not met because (1) "only the word of [a] Fort Dix staff member was relied upon" for the DHO's finding of a Code 205 violation, and (2) PREA procedures were allegedly not followed, resulting in a failure to obtain a "rape kit" (ECF No. 1-1 at 2), are without merit.

First, relying solely on the "word" of a Fort Dix staff member would itself be sufficient to sustain the charge, because the testimony or statement of a witness to the prohibited act would constitute "some evidence," and this Court would not engage in an "independent assessment of the credibility of witnesses." *Jones*, 2023 WL 8295274, at *2 (quoting *Campbell*, 808 F. App'x at 72). Many courts have recognized that a staff member's statement that he witnessed a prohibited act is, in and of itself, sufficient to satisfy the "some evidence standard." *See*, *e.g.*, *Benson v. United States*, 625 F. App'x 20, 22 (3d Cir. 2015) ("[T]he DHO's finding that Benson engaged in sexual acts in violation of Code 205 by 'exposing and rubbing [his] penis in view of staff' was supported by 'some evidence.' The DHO relied upon the incident report filed by Officer Concepcion, in which she stated that she observed Benson with his pants pulled down, massaging his exposed penis. *The 'some evidence' standard may be satisfied solely by such an incident report.*") (emphasis added) (citing *Hudson v. Johnson,* 242 F.3d 534, 536–37 (5th Cir. 2001); *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999)); *Pachtinger v. Grondolsky*, 340 F. App'x 774, 777 (3d Cir. 2009) (Code 205 violation was supported by some evidence where DHO relied on incident report and inmate's incriminating statement that he was in a bunk with the other inmate, despite inmate's denial that sexual acts occurred); *Compton v. Ebbert*, No. 18-220, 2019 WL 4168852, at *6 (M.D. Pa. Sept. 3, 2019) (holding there was some evidentiary support in the record for a Code 205 violation where DHO gave the greater weight of the evidence to the reporting officer's eyewitness account and not inmates' statements denying a sexual act occurred); *Willis v. Zickefoose*, No. 11-2077, 2012 WL 2076827, at *10 (D.N.J. June 8, 2012) (holding that Code 205 violation was supported by some evidence where DHO relied on eyewitness accounts of staff members and inmate's inconsistent statements regarding his innocence); *see also Hrbek v. Nix,* 12 F.3d 777, 781 (8th Cir. 1993) ("[D]isciplinary actions may be taken—and often they are—

based only on a guard's report. Even when there is substantial evidence to the contrary, the committee may find the guard's report to be credible and therefore take disciplinary action.") (citing *Hill,* 472 U.S. at 456). Here, the incident report containing the eyewitness account of Petitioner engaging in a sexual act provided "some evidence" of Petitioner's guilt, *see* ECF No. 9-2 at 11 ("The 5812 Unit Officer stated when he pulled the curtain he saw [Petitioner] lying next to inmate [redacted] and pulling his penis out of [redacted] anus."), and his argument—i.e., that an officer's statement standing alone is insufficient—must be rejected.

In any event, here the DHO relied on more than the word of a staff member; namely, Petitioner's testimony during the hearing, photographs, FCI Fort Dix generated reports, statements from Petitioner and the inmate with whom Petitioner engaged in the sexual act—both of whom "denied any sex acts occurred at all"—and inmates who were in the room when the act occurred and who "indicated the two have been in a sexual relationship for some time prior to the incident on May 15, 2022." ECF No. 9-2 at 6–7. In other words, the DHO "considered [Petitioner's] denial of engaging in a sexual act," but ultimately "gave greater weight to the staff member's eyewitness account of the incident . . . , photographs, and FCI Fort Dix generated reports." *Id.* at 7. In short, the evidence considered here would likely satisfy a preponderance (or even higher) standard; it plainly satisfies the much lower "some evidence" standard.

Second, to the extent Petitioner argues that the PREA investigation was not properly conducted, and this somehow undermined the outcome of the DHO hearing or resulted in insufficient evidence for a finding of guilt, this too is without merit. As explained above, the Court need only find that (1) Petitioner received the procedural protections he was due in connection with his disciplinary proceedings and (2) some evidence supported the DHO's finding that Petitioner engaged in the prohibited conduct. "[T]he 'some evidence' standard does not require

. . . independent assessment of the credibility of witnesses or weighing of the evidence." *Speight v. Minor*, 245 F. App'x 213, 216 (3d Cir. 2007) (quoting *Hill*, 472 U.S. at 455–56). Rather, the Court need only find that the DHO's "decision had 'some basis in fact.'" *Denny v. Schultz*, 708 F.3d at 140, 145 (2013). Here, the DHO's finding that "[b]y eye witness accounts [Petitioner was] clearly observed engaging in a sexual act" provides a solid basis in fact for the conclusion that Petitioner violated Code 205. ECF No. 9-2 at 7. Accordingly, applying the highly deferential "some evidence" standard, for the reasons above, the Court rejects Petitioner's evidentiary challenges to the DHO's conclusions.[3]

As Petitioner has not established a violation of his due process rights during his disciplinary proceedings, and the DHO's finding that Petitioner violated Code 205 by engaging in a sexual act was supported by "some evidence," the petition will be denied.

### IV.   CONCLUSION

For the foregoing reasons, Petitioner's habeas petition (ECF No. 1) is denied**.** An appropriate order will follow.

Dated: March 25, 2024

s/ Christine P. O'Hearn
**CHRISTINE P. O'HEARN**
**United States District Judge**

---

[3] To the extent Petitioner argues that he is entitled to relief because BOP officials allegedly did not follow required procedures in the related PREA investigation, his argument is without merit because there is no private right of action under the PREA. *See Williams v. Cirillo*, No. 23-1513, 2023 WL 6876417, at *3 (D.N.J. Oct. 17, 2023) ("PREA does not create a private cause of action.") (quoting *Bey v. N.J. Dep't of Corr.*, 2018 WL 5784999, at *3 (D.N.J. Nov. 5, 2018)); *Walsh v. N.J. Dep't of Corr.*, No. 17-2442, 2017 WL 3835666, at *3 (D.N.J. Aug. 31, 2017) ("There is no provision in [] PREA for an individual prisoner to enforce [its] standards or to assert a private right of action."); *Nestor v. Dir. of N.E. Region Bureau of Prisons*, No. 11-4683, 2012 WL 6691791, at *3 (D.N.J. Dec. 20, 2012) ("The [c]ourt is inclined to agree that [p]laintiff may not assert a private claim under [] PREA.") (citations omitted); *see also Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015) ("Insofar as Krieg argues that his rights under the [PREA] were violated, other courts addressing this issue have found that the PREA does not establish a private cause of action for allegations of prison rape.") (citing cases). In other words, a prison official's failure to follow required PREA procedures—assuming (without deciding) such a failure occurred—would not excuse Petitioner's violation of prison regulations or entitle him to restoration of lost good conduct time.